;

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA-EASTERN DIVISION

| | |
|---|---|
| JOHN DONALD PAULSRUD, JR., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CAROLYN W. COLVIN, Acting ) <br> Commissioner of Social Security, ) <br> ) <br> Defendant. ) <br> ) | ED CV 14-01626-SH <br><br> MEMORANDUM DECISION <br> AND ORDER |

    This matter is before the Court for review of the decision by the Commissioner of Social Security denying plaintiff's applications for Disability Insurance Benefits and Supplemental Security Income. Pursuant to 28 U.S.C. § 636(c), the parties have consented that the case may be handled by the undersigned. The action arises under 42 U.S.C. § 405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The plaintiff and the defendant have filed their pleadings (Brief with Points and Authorities in Support of Plaintiff's

Complaint ["Plaintiff's Brief"]; Memorandum in Support of Defendant's Answer ["Defendant's Brief"]), and the defendant has filed the certified transcript of record. After reviewing the matter, the Court concludes that the decision of the Commissioner should be reversed and remanded.

## I.  BACKGROUND

On September 29, 2011, plaintiff John Donald Paulsrud, Jr. filed applications for period of disability or Disability Insurance Benefits and for Supplemental Security Income, alleging an inability to work since January 31, 2007.  (See Administrative Record ["AR"] 177-94).  On February 8, 2013 (following a hearing on January 28, 2013, see AR 26-49), an Administrative Law Judge ("ALJ") determined that plaintiff had the following severe combination of impairments -- "degenerative disc disease; cervical myofasical strain; thoracic myofascial strain; lumbar myofascial strain; right knee osteoarthritis; left patellofemoral syndrome; bilateral trapezial strain; right 2nd digit amputation; degenerative changes of the right 2nd metacarpophalangeal joint" -- but found that plaintiff was not disabled within the meaning of the Social Security Act.  (See AR 10-20).

Following the Appeals Council's denial of plaintiff's request for a review of the hearing decision (see AR 1-3), plaintiff filed this action in this Court.

Plaintiff solely alleges that the ALJ erred in failing to properly assess plaintiff's credibility.  After reviewing the matter, the Court concludes that the decision of the Commissioner should be reversed and remanded.

## II.  DISCUSSION

Plaintiff asserts that the ALJ failed to provide clear and convincing reasons for finding plaintiff not fully credible.  Defendant asserts that the ALJ properly assessed plaintiff's credibility.

At the administrative hearing, plaintiff testified that he lives in a house with his wife and mother.

He testified that he has a driver's license, and has no problems driving a car. During the day, he watches television, usually sitting but sometimes lying down. When necessary, he gets his mother something to eat or takes his wife to the store. He sometimes does the dishes for his wife, but his wife now does the yard work (because of his back and hands impairments). He has no problem taking a shower or brushing his teeth. He does not use a computer (he does not have one). He occasionally has trouble sleeping at night.

He testified that the only reason he leaves the house is to go to the store and that he does not have any friends. He used to build models, but no longer does.

He testified that he is unable to work because of his impairments in his back, both hands, neck and right shoulder. He suffers pain (neither sharp nor dull) in his lower back and mid- back. The level of back pain varies throughout the day. He uses heat, cold and medication to alleviate his back pain. With medication, his back pain rates as 7 out of 10. His back pain does not radiate to his legs or arms. He has never used or been recommended any shot or a TENS unit (or any electrodes) for his back pain. Every day and throughout the day he suffers sharp pain in his knuckles. With medication, the pain in his knuckles rates 8 out of 10.) He suffers pain from his right shoulder to his neck. The level of pain varies. His pain typically rates about 5 out of 10. His doctor has never recommended surgery.

He testified he last saw his doctor on January 22, 2013, at which time he was prescribed the following pills: Levoxyl, Prednisone, Piroxicam, Tramado calcium and Vitamin D. He takes Tramadol once a day. The pills are "not really" effective for his pain; they help "slightly."

He testified he is able to lift ten pounds at most. He can hold a gallon of milk with one hand. He can sit for an hour before he has to stand up or move around because of his

pain. After he stands up and moves around, he usually walks to the kitchen, gets something to drink, and stands watching television for a few minutes before he is able to sit again. He can stand for about an hour and a half, or an hour and 45 minutes, before he feels back pain. He does not have any problems walking. He is able to bend over at the waist, although it hurts. He can kneel on his knees. He is able to manipulate small objects with his fingers. (See AR 28-42).

The ALJ found that plaintiff had the following residual functional capacity ("RFC")[1]: the ability to perform a range of light work[2] with certain limitations, including: lifting and carrying 20 pounds occasionally and 10 pounds frequently; sitting for up to 6 hours out of an 8-hour workday; standing and/or walking for 6 hours out of an 8-hour workday; pushing and/or pulling as much as he can lift and/or carry; limited to frequent right hand control and frequent handling and fingering with the right upper extremity; no performing overhead reaching with either upper extremity; and performing all postural activities on a frequent basis. (See AR 14).

The ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent those statements are inconsistent with the residual functional capacity assessment herein." (AR 15). The ALJ then stated:

> At the hearing, the claimant testified that he had very limited activities of daily living. The claimant testified he spent most of his day lying down watching television. He stated he could no longer do yard work because of the pain in his

---

[1] A Residual Functional Capacity ("RFC") is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. § 404.1545(a)(1).

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b) and 416.967(b).

4

hands. Even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively benign medical evidence and other factors discussed in this decision. This suggests either that the limited range of daily activities is a lifestyle choice and not due to any established impairment or that claimant is attempting to minimize his activities of daily living to portray more severe functional limitations to increase the chances of obtaining benefits. In addition, the claimant acknowledged he was able to drive, feed his mom, take his wife to the store, and provided for his own personal care. Some of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment and are inconsistent with the presence of an incapacitating or debilitating condition. **While the scope and extent of the claimant's regular activities may change from day to day, the claimant's ability to participate in such activities tends to suggest that the claimant is far more capable than he alleges and undermines** the credibility of the claimant's allegations of disabling functional limitations.

The credibility of the claimant's allegations regarding the severity of the claimant's symptoms and limitations is diminished because those allegations are greater than expected in light of the limited and relatively benign objective evidence of record. The limited and relatively benign positive objective and clinical and diagnostic findings of the treating source and a consultative examiner since the alleged onset date as described below do not support more restrictive functional limitations than those assessed herein.

In response to the objective clinical and diagnostic findings of the treating source, the claimant received only routine conservative treatment for arthritic joint pain, hypothyroidism, and acute conditions of less than 12 months duration (Exs. B1F and B4F). The claimant made complaints of chronic joint pain to the treating

5

source and was prescribed pain medication. Some degenerative changes were confirmed by diagnostic imaging. On February 21, 2012, an x-ray examination showed osteoarthritis of the right knee (Ex. B2F, p. 33). On May 2, 2012, an x-ray examination revealed mild rheumatoid and osteoarthritic change in the left wrist and left hand (Ex. B2F, p. 4). Also on May 2, 2012, an x-ray examination demonstrated a combination of mild rheumatoid and osteoarthric change in the right hand, amputation of the right second middle phalanx, and probably scapholunate ligamentous injury of the right wrist with no acute fracture (Ex. B2F, p. 3). The lack of more aggressive treatment, including surgical intervention or even referral to a specialist, is inconsistent with the alleged severity of the functional limitations imposed by the claimant's impairments and suggests the claimant's symptoms and limitations were not as severe as the claimant alleged. (AR 15-16, emphasis in original).

A claimant initially must produce objective medical evidence establishing a medical impairment reasonably likely to be the cause of the subjective symptoms. Smolen v. Chater, 157 F.3d 1273, 1281 (9th Cir. 1996); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991). Once a claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged, and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his pain and symptoms only by articulating clear and convincing reasons for doing so. Smolen v. Chater, supra; see also Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997).

Here, substantial evidence did not support the ALJ's finding that plaintiff's testimony about the intensity, persistence and limiting effects of the symptoms was not fully credible.[3]

One reason given by the ALJ -- plaintiff's ability to perform daily activities such as drive, feed his mom, take his wife to the store, and provide for his own personal care, did not support the ALJ's credibility finding.  The ALJ failed to discuss how long plaintiff could engage in such activities.  Such activities are not inconsistent with plaintiff's claimed inability to perform any work.  See Vertigan v. Halter, 260 F.3d 1044, 1049-50 (9th Cir. 2001)("[T]he mere fact that a plaintiff has carried on certain daily activities such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability."); Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999)("If a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations.");

Another reason given by the ALJ -- the conservative nature of plaintiff's treatment -- was not a clear and convincing reason for finding plaintiff not fully credible. Although the ALJ relied on the conservative course of treatment to diminish plaintiff's credibility, the ALJ did not cite to any information or medical evidence indicating that aggressive treatment (such as surgical intervention) would have been a viable option for treating plaintiff's osteoarthritis.  See Carmickle v. Comm., SSA, 533 F.3d 1155, 1162 (9th Cir. 2008)("Although a conservative course of treatment can undermine allegations of debilitating pain, such fact is not a proper basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking more aggressive treatment.").

---

[3] The Court will not consider reasons for finding plaintiff not fully credible (see Defendant's Brief at 5-6) that were not given by the ALJ in the Decision.  See Pinto v. Massanari, 249 F.3d 840, 847-48 (9th Cir. 2001); SEC v. Chenery Corp., 332 US 194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947).]]

Moreover, at the hearing, the ALJ failed to ask plaintiff whether his doctor had discussed more aggressive treatment for his hands (see AR 36-37). Moreover, although doctors may not have recommended surgery, plaintiff had been prescribed much stronger than over-the-counter medication during his treatment. Compare e.g., Parra v. Astrue, 481 F.3d 742, (9th Cir. 2007)(noting that the "[t]he ALJ also noted that Parra's physical ailments were treated with an over-the-counter pain medication).

The third and final reason reason given by the ALJ -- the lack of objective medical evidence for plaintiff's symptoms and limitations -- cannot, by itself, support the credibility finding. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998).

Since the ALJ failed to provide clear and convincing reasons for partially rejecting plaintiff's testimony, this case should be remanded. See Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003). The Commissioner shall remand the matter to an ALJ who regularly adjudicates cases within the Ninth Circuit.

### III. RECOMMENDATION

For the foregoing reasons, the decision of the Commissioner should be reversed, and the matter should be remanded for further proceedings in accordance with the decision, pursuant to Sentence 4 of 42 U.S.C. § 405(g).

DATED: February 12, 2015

STEPHEN J. HILLMAN
UNITED STATES MAGISTRATE JUDGE